UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSE LUIS VELAZQUEZ
VELAZQUEZ,

     Petitioner,

v.

KEVIN RAYCRAFT, in his official
capacity as Immigration and Customs
Enforcement, Acting Director of
Detroit Field Office, Enforcement and
Removal Operations, et al.,

     Respondents.

Case No. 25-cv-13675

Honorable Robert J. White

---

**ORDER GRANTING THE AMENDED PETITION FOR A WRIT OF
HABEAS CORPUS**

---

Jose Luis Velazquez-Velazquez filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 12). Velazquez alleges that Respondents detained him without a bond hearing in violation of the Immigration and Nationality Act (INA), and that his continued detention without a hearing violates the Due Process Clause in the Fifth Amendment to the United States Constitution. (*Id.* at PageID.170-73).

Respondents include Kevin Raycraft, the Acting Director of the Detroit Field Office of the Immigration and Customs Enforcement's (ICE) Enforcement and

Removal Operations division, Department of Homeland Security (DHS) Secretary Kristi Noem, DHS, United States Attorney General Pamela Bondi, the Executive Office for Immigration Review (EOIR), and Monroe County Sheriff Troy Goodnough. (*Id.* at PageID.159-60).  Velazquez sued the individual Respondents in their official capacity. (*Id.*).

Respondents claim that Velazquez's detention is not unlawful. (ECF No. 16, PageID.243).  Rather, the applicable statute, 8 U.S.C. § 1225(b)(2)(A)[1], mandates Velazquez's detention pending the outcome of his removal proceedings. (*Id.* PageID.243-49).  Respondents also ask the Court to refrain from deciding the amended petition's merits until Velazquez administratively exhausts his claims. (*Id.* at PageID.242-43).

In the amended petition and reply, Velazquez argues that § 1225(b)(2)(A) does not govern his detention. (ECF No. 12, PageID.163-70; ECF No. 17, PageID.272-74).  That is, the Court should interpret § 1225, and its subsection (b)(2)(A), as applying to recently arrived noncitizens or those apprehended at a border or port of entry. (ECF No. 12, PageID.168-69; ECF No. 17, PageID.272-74). Because Velazquez arrived decades ago and has since then lived in the United States without

---

[1] Congress enacted the detention provisions at §§ 1226(a) and 1225(b)(2) through the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104-208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585.

seeking lawful admission, he instead falls within § 1226(a)'s catchall provision for the removal of noncitizens. (ECF No. 12, PageID.155-56; ECF No. 17, PageID.272-74).  According to Velazquez, the language of both §§ 1225(b)(2)(A) and 1226(a), in addition to § 1226(a)'s legislative history and practical application, support his position. (ECF No. 12, PageID.163-69).  Thus, Velazquez is entitled to a bond redetermination hearing under § 1226(a) and its implementing regulations. (ECF No. 12, PageID.170-72; ECF No. 17, PageID.272-74).  Velazquez also asks the Court to waive any administrative exhaustion requirements. (ECF No. 12, PageID.169-70; ECF No. 17, PageID.271-72).

The Court reviewed the parties' briefing in addition to any supplemental authority filed on the docket.  For the reasons stated below, the Court will waive administrative exhaustion given that the amended petition presents a legal question appropriate for the Court to decide, and that the significant delays inherent in the Board of Immigration Appeals (BIA) appeal system mean Velazquez likely faces prolonged detention otherwise.  And based on the Court's statutory interpretation of §§ 1225(b)(2)(A) and 1226(a) and § 1226(a)'s history, the Court finds that § 1226(a), and not § 1225(b)(2)(A), governs Velazquez's detention.  As a result, the Court will grant Velazquez's amended petition and order the appropriate Respondent to ensure that he receives a bond redetermination hearing within seven days of this Order or otherwise release him.  In addition, the Court will dismiss all Respondents

3

except for Velazquez's immediate physical custodian, Monroe County Sheriff Troy Goodnough.

## I.    Background

Velazquez is a Mexican citizen who arrived in the United States in 2003 and has lived here ever since. (ECF No. 12, PageID.154-55, 158). When Velazquez entered the United States, immigration officers did not inspect him at a port of entry. Nor did they lawfully admit or parole him. Velazquez does not challenge that he is in the United States unlawfully.

ICE arrested Velazquez on October 25, 2025 in St. Clair Shores, Michigan. (ECF No. 12, PageID.160). After his arrest, ICE detained him and initiated removal proceedings against him by filing a Form I-862, Notice to Appear (NTA). (ECF No. 9-2, PageID.132-35). The Form I-862 charged Velazquez with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) and lacking valid entry documents under § 1182(a)(7)(A)(i)(I). (*Id.*, PageID.135).

Velazquez's arrest required him to appear for removal proceedings before an immigration judge pursuant to 8 U.S.C. § 1229a. (ECF No. 9-3, PageID.136-37). Velazquez has been in immigration detention since his arrest and is currently housed at the Monroe County jail. (ECF No. 9-3, PageID.136; ECF No. 12, PageID.161).

## II.      Legal Standard

A district court may grant a writ of habeas corpus if a petitioner is in federal custody in violation of the Constitution or federal law. 28 U.S.C. § 2241.  If a district court entertains a habeas petition, then it must either award the writ or order the respondent to show cause as to why the writ should not be granted, unless it is apparent from the application that the petitioner is not entitled to the requested relief. § 2243.

## III.     Analysis

### A.      Waiver of Administrative Exhaustion is Warranted.

Respondents argue that Velazquez must exhaust his administrative remedies through an immigration removal proceeding before the Court considers the merits of his habeas petition. (ECF No. 16, PageID.242-43).  In response, Velazquez asks the Court to waive any exhaustion requirements because an appeal would cause "undue delay" and ultimately be futile. (ECF No. 17, PageID.271).

Here, no applicable statute or rule mandates administrative exhaustion. Whether to require exhaustion is thus within the district court's "sound judicial discretion." *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted). Otherwise referred to as "prudential" exhaustion, *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019), a court-made exhaustion rule must comport with the statutory scheme and congressional intent. *Shearson*, 725 F.3d at 593–94.  The

Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention. *Hernandez v. U.S. Dep't of Homeland Sec.*, No. 1:25CV01621, 2025 WL 2444114, at \*8 (N.D. Ohio Aug. 25, 2025).  As a result, some courts in this circuit apply Ninth Circuit precedent, but are split on the outcome. *See Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at \*4–5 (E.D. Mich. Aug. 29, 2025); *Villalta v. Greene*, No. 4:25-cv-01594, 2025 WL 2472886, at \*2 (N.D. Ohio Aug. 5, 2025); *Hernandez*, 2025 WL 2444114, at \*8–10.

But even if a court would ordinarily enforce prudential exhaustion, it may still choose to waive such exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at \*4.  For example, when the "legal question is fit for resolution and delay means hardship," a court may choose to decide the issues itself. *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted).  A court may also excuse exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).  Here, Velazquez does not dispute that prudential exhaustion applies but instead asks the Court to waive the requirement. (ECF No. 12, PageID.169-70; ECF No. 17, PageID.271-72).  The Court finds that waiver is appropriate.

To start, the legal question is fit for resolution.  The amended habeas petition requires the Court to decide whether § 1226(a) or § 1225(b)(2)(A) applies to

Velazquez. (ECF No. 12, PageID.163-69).  To answer the question, the Court must determine how the two sections interplay with one another.  The Court must also determine whether the terms "applicant for admission" or "seeking admission" in § 1225 include noncitizens who have lived in the United States illegally for years but never sought lawful status.  Ultimately, the issue boils down to a matter of statutory interpretation.  And matters of statutory interpretation belong historically within the province of the courts. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (citing *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)).

Velazquez also faces significant hardship should the Court refrain from deciding the issue so that he can first pursue administrative remedies.  Courts may waive exhaustion requirements when an administrative remedy is subject to "an unreasonable or indefinite timeline." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).  Setting a bond hearing in the immigration court, obtaining a decision on the bond request, and appealing an adverse decision could "typically take six months or more to be resolved at the BIA." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wa. 2025).  Six months of further, and potentially unnecessary, incarceration is significantly longer than the thirty days the Sixth Circuit rejected as "unreasonable" or "indefinite" in *United States v. Alam*, 960 F.3d 831, 836 (6th Cir. 2020).  Plus, the "delays inherent" in the BIA's administrative process "would result in the very harm that the bond hearing was designed to prevent," that is, prolonged

detention without due process. *Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 237 (W.D.N.Y. 2019) (citation omitted); *see also Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *5 (D. Mass. Jul. 7, 2025) (finding the "prolonged loss of liberty" from "several additional months" in possibly unlawful detention would "constitute irreparable harm"). The prevention of six months or more of unlawful detention thus outweighs the interests that the immigration court or the BIA might have in resolving Velazquez's bond request administratively.

Further, Velazquez lacks the same unfettered access to attorneys, witnesses, evidence, and even basic technology like computers or cellphones, as he would have on bond. *See Rodriguez*, 779 F. Supp. 3d at 1254 (finding further unnecessary detention harmed plaintiff's ability to gather evidence and prepare case against deportation). Because the Court can decide now whether he is entitled to a bond redetermination hearing, Velazquez could be released within a few weeks as compared to the anticipated half-year (or more) trudging through the administrative process. If the Court requires administrative exhaustion, Velzaquez faces not only more, potentially unnecessary, months in prison, but also harm to his ability to mount a successful case against his removal. As a result, the Court will waive administrative exhaustion.[2]

---

[2] Because the Court finds ample reasons to waive prudential exhaustion already, it will not consider Velazquez's argument that obtaining bond through an administrative proceeding is futile. (ECF No. 12, PageID.169).

**B.      Section 1226(a) Applies to Velazquez's Detention.**

Velazquez argues that § 1225(b)(2) does not apply to him as he is not a recent arrival nor is he seeking admission. (ECF No. 12, PageID.163-69).  His continued detention under § 1225(b)(2) is therefore unlawful. (*Id.* at PageID.168-69).  Instead, as a noncitizen who previously entered the United States and lived here for decades before his arrest by ICE, § 1226(a) governs his detention. (*Id.*).  Accordingly, Velazquez is entitled to a bond redetermination hearing. (*Id.* at PageID.174).

Respondents argue that Velazquez is properly detained under § 1225(b)(2)(A). (ECF No. 16, PageID.243-61).  That is, because Velazquez did not enter the country lawfully, he is still considered an "applicant for admission" or "seeking admission" under § 1225. (*Id.* at PageID.244-48).  Section 1226(a) is reserved for those who do not fall within the confines of § 1225(b)(2)(A), namely, noncitizens who entered the country lawfully. (*Id.* at PageID.253).

After reviewing the statutory text, the statute's history, Congressional intent, and § 1226(a)'s application for the past three decades, the Court finds that Velazquez falls within the confines of § 1226(a), and not § 1225(b)(2)(A).  As a result, Velazquez is entitled to a bond redetermination hearing.

**1.      Principles of Statutory Interpretation Show § 1226(a) Applies to Velazquez.**

The core of the parties' dispute is whether the terms "applicant for admission" and "seeking admission" in § 1225 apply to Velazquez.  If they do, then the statute

mandates Velazquez's detention until the conclusion of his removal proceedings.  If they do not, then Velazquez falls within § 1226(a)'s catchall for noncitizens apprehended and detained, and he is entitled to a bond redetermination hearing.

When interpreting a statute, "the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (quoting *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016)); *see also King v. Burwell*, 576 U.S. 473, 486 (2015).  But often "the 'meaning – or ambiguity – of certain words or phrases may only become evident when placed in context.'" *Id.* (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)).

The text of § 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States."  The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13).  As relevant here, § 1225(b)(2)(A) allows an immigration officer to detain an applicant for admission under § 1229a if the noncitizen "is not clearly and beyond a doubt entitled to be admitted."  Section 1226(a) is less specific.  It authorizes the detention of a noncitizen "[o]n a warrant issued by the Attorney General" pending removal proceedings. § 1226(a).  At issue

is whether "an alien present in the United States who has not been admitted" includes an individual that intentionally avoided lawful entry, like Velazquez.

Here, the statutory text does not provide a definitive answer as to what it means to be present without admittance where, as here, the individual has already entered and spent decades living in the United States.  And even if the terms are unambiguous, context still matters. *Yates v. United States*, 574 U.S. 528, 537 (2015) (emphasizing the importance of context even when a statutory term is unambiguous). The Court thus turns to § 1225(b)(2)(A)'s contextual clues. *See King*, 576 U.S. at 486.  The Court finds that the overall context of § 1225 limits the scope of the terms "applicant for admission" and "seeking admission" in § 1225(b)(2)(A).  "It is 'a cardinal principle of statutory construction' that a 'statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).  To start, giving effect to each clause and word of a statute includes an analysis of the statute's title.  The title of § 1225 is revealing: "Inspection by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." (emphasis added).  The use of "arriving" to describe noncitizens strongly indicates that the statute governs the *entrance* of noncitizens to the United States.  This reading is bolstered by the fact that § 1225 clearly establishes an inspection scheme for when to let noncitizens into

11

the country. *See* § 1225; *see Dubin v. United States*, 599 U.S. 110, 121 (2023) ("a title 'is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest'") (quoting *Yates*, 574 U.S. at 552 (Alito, J., concurring in judgment)).  In fact, the subheading for § 1225(b)(2)(A) reads "Inspection of Other Aliens," reinforcing the idea that the subsection applies to those coming in, not already present.

The statute also explicitly addresses its effect on "stowaways" and "crewm[e]n," words that suggest arrival at a border or port of entry.  That Congress separated removal of arriving aliens from its more general section for "Apprehension and detention of aliens," § 1226, implies that Congress enacted § 1225 for a specific, limited purpose. *See Dubin*, 599 U.S. at 122.  Considering § 1225 in its entirety, then, the Court may infer that the terms "applicant for admission" and "seeking admission" do not implicate noncitizens like Velazquez – who lived in the United States for twenty years, never sought admission, and was not arrested when attempting to cross the border or pass through a port of entry illegally. (ECF No. 12, PageID.158, 160).

Section 1225's place in the overall statutory scheme also supports the Court's reading. *King*, 576 U.S. at 486 (holding courts are meant to "construe statutes, not isolated provisions") (citation omitted).  Whereas § 1225 governs removal proceedings for "arriving aliens," § 1226(a) serves as a catchall.  As the Supreme

Court in *Jennings v. Rodriguez* explained, § 1226(a) is the "default rule" and "applies to aliens already present in the United States." 583 U.S. 281, 288, 301 (2018).[3]  The inclusion of both provisions in the overall statute is likely no coincidence, but rather a way for Congress to capture noncitizens who fall outside of the specified categories.  And ultimately, Velazquez and the circumstances of his arrest align with § 1226(a), not § 1225(b)(2)(A).

The recent amendment to § 1226 also renders Respondents' interpretation of § 1225(b)(2)(A) superfluous. *See Gomes*, 2025 WL 1869299, at *6–7.  Congress amended § 1226 via the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).  The Laken Riley Act added subsection § 1226(c)(1)(E), which mandates detention for noncitizens who are inadmissible under §§ 1182(a)(6)(A) (noncitizens present in the United States without being admitted or paroled, like Velazquez), 1182(a)(6)(C) (misrepresentation), or 1182(a)(7) (lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes. § 1226(c)(1)(E)(i)–(ii).  Considering that § 1182(a)(6)(A)(i) specifically refers to aliens "present in the United States without being admitted or paroled," and that § 1226(c)(1)(E) requires detention without bond of these individuals if they have also committed a felony, the recently created statutory exception would be redundant if § 1225(b)(2) authorized

---

[3] The Court cites *Jennings* because it acknowledges § 1226(a) as the default rule. But the Supreme Court did not rule on whether non-admitted or inadmissible aliens fell within boundaries of § 1226(a) as opposed to § 1225(b)(2)(A).

their detention as well. *Gomes*, 2025 WL 1869299, at *7. That is, because an alien present in the United States without admittance would be unlikely to prove that they are "clearly and beyond a doubt entitled to be admitted," ICE would never need to rely on § 1226(c)(1)(E) to detain them. *Id.*; *see Marx v. Gen. Rev. Corp.*, 568 U.S 371, 386 (2013) ("the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme"). As a district court in Massachusetts explained, "[s]uch an interpretation would largely nullify a statute Congress enacted this very year, [and] must be rejected." *Gomes*, 2025 WL 1869299, at *7.

Nor is the Court bound by the BIA's recent decision in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), which applies § 1225(b)(2)(A). *See Loper Bright*, 603 U.S. at 413 ("[C]ourts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous."). The facts are notably different. In *Q. Li*, DHS arrested respondent at the border after she had crossed and granted her parole. 29 I&N Dec. at 67. Respondent's parole conditions required her to report regularly to DHS offices. *Id.* But two years into her parole, DHS arrested respondent after discovering she was wanted for travel document forgery and human smuggling crimes in Spain. *Id.*

Here, ICE arrested Velazquez twenty years after he first arrived in the United States. (ECF No. 12, PageID.158, 160). ICE detained and charged him with

inadmissibility under § 1182(a)(6)(A)(i). (ECF No. 9-2, PageID.135).   Taking § 1226(a) at face value, Velazquez's arrest and detention fall within the statute's strictures.

Respondents also offered the BIA's opinion in *In the Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025), as persuasive authority. (ECF No. 16, PageID.260).  The BIA in that case concluded decisively that § 1225(b)(2)(A) covers inadmissible noncitizens who lived unlawfully in the United States for longer than two years without apprehension.  The BIA's statutory analysis reached the opposite conclusion from the Court's here.  But, again, the Court is not bound by the BIA's interpretation. *Loper Bright*, 603 U.S. at 413.  And the Court respectfully disagrees with how the BIA reads §§ 1226(a) and 1225(b)(2)(A) in conjunction with one another.

In *Hurtado*, the BIA characterized as a "legal conundrum" the idea that a noncitizen's continued unlawful presence means they are not "seeking admission." *Id.* at 221.  The Court, however, finds it difficult to square a noncitizen's continued presence with the term "seeking admission," when that noncitizen never attempted to obtain lawful status.  This is especially true in light of § 1225's statutory context. The BIA also concluded that § 1225(b)(2)(A) does not render superfluous the Laken Riley Act. *Id.* at 221-22.  But as explained above, considering both §§ 1225(b)(2)(A) and 1226(c)(1)(E) mandate detention for inadmissible citizens, whether one includes

additional conditions for such detention does not alter the redundant impact. Overall, the Court is not persuaded by the statutory interpretation advanced by the BIA.

Finally, the BIA's decision to pivot from three decades of consistent statutory interpretation and Respondents' call for Velazquez's detention under § 1225(b)(2)(A) is at odds with the predominant view of district courts that have confronted the same question of statutory interpretation.  At least a dozen federal courts concur generally with this Court's interpretation of the statutory language as applied in this context. *See Gomes*, 2025 WL 1869299, at *5–6; *Rodriguez*, 779 F. Supp. 3d at 1255–60; *Vasquez Garcia v. Noem*, 803 F. Supp. 3d 1064 (S.D. Ca. Sept. 3, 2025); *Lopez-Campos v. Raycroft*, 2025 WL 2496379; *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238 (D. Mass. July 24, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025); *Rosado v. Figueroa et al.*, No. 2:25-cv-02157-DLR, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025); *Lopez Benitez v. Francis et al.*, No. 1:25-cv-05937-DEH, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Gonzalez et al. v. Noem et al.*, No. 5:25-cv-02054-ODW-BFM (C.D. Cal. Aug. 13, 2025); *dos Santos v. Noem*, No. 1:25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Romero v. Hyde, et al.*, No. 1:25-cv-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Benitez et al. v. Noem et al.*, No.

16

5:25-cv-02190-RGK-AS (C.D. Cal. Aug. 26, 2025); *Kostak v. Trump et al.*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025).[4]

Thus, when taken into consideration alongside the history of § 1226(a) and its application, it is apparent that § 1226(a) governs Velazquez's detention, not § 1225(b)(2)(A).

### 2. Section 1226(a)'s History and Previous Application Lend Credence to the Court's Interpretation.

As explained in *Rodriguez*, the legislative history behind § 1226 indicates that the statute applies to noncitizens that "reside in the United States but previously entered without inspection." 779 F. Supp. 3d at 1260.

> Before IIRIRA passed, the predecessor statute to Section 1226(a) governed deportation proceedings for all noncitizens arrested within the United States. *See* 8 U.S.C. § 1252(a)(1) (1994) ("Pending a determination of deportability ... any [noncitizen] ... may, upon warrant of the Attorney General, be arrested and taken into custody."); *Hose v. I.N.S.*, 180 F.3d 992, 994 (9th Cir. 1999) ("A deportation hearing was the 'usual means of proceeding against a[ ] [noncitizen] already physically in the United States[.]' "). This predecessor statute, like Section 1226(a), included discretionary release on bond. *See* § 1252(a)(1) (1994) ("[A]ny such [noncitizen] taken into custody may, in the discretion of the Attorney General ... be continued in custody ... [or] be released under bond[.]"). Upon passing IIRIRA, Congress declared

---

[4] A divided panel of the United States Court of Appeals for the Fifth Circuit recently sided with Respondents' interpretation of the statutory language. *See Buenrostro-Mendez v. Bondi*, Nos. 25-20496 & 40701, 2026 U.S. App. LEXIS 3899 (5th Cir. Feb. 6, 2026). Because decisions from another circuit's court of appeals are merely persuasive, the Court does not find the majority's opinion in *Buenrostro-Mendez* convincing and declines to follow it. *See, e.g., Marku v. Ashcroft*, 380 F.3d 982, 988 (6th Cir. 2004) (remarking how "cases from outside the circuit are not binding on us, but they do have some persuasive value.").

> that the new Section 1226(a) "restates the current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond a[ ] [noncitizen] who is not lawfully in the United States." H.R. Rep. No. 104-469, pt. 1, at 229; *see also* H.R. Rep. No. 104-828, at 210 (same).

*Id.*   If § 1226(a) adopted the predecessor's authority to release noncitizens unlawfully present in the United States on bond, then Velazquez is entitled to discretionary release on bond as well.

Decades of consistent agency practice also support Velazquez's entitlement to a bond redetermination hearing under § 1226(a). (ECF No. 12, PageID.164-65). The government's longstanding practices can inform the court's determination of what the law is. *Loper Bright*, 603 U.S. at 386. Additionally, respect for Executive Branch interpretations of statutes may be "especially warranted" when the interpretation "was issued roughly contemporaneously with enactment of the statute and remained consistent over time." *Id.*

When the IIRIRA passed, EOIR drafted new regulations that provided: "[a]liens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10,312, 10,323 (Mar. 6, 1997). For almost three decades, most noncitizens who entered without inspection were placed in standard removal proceedings and

received bond hearings, unless subject to an exception. (ECF No. 12, PageID.164-65).  Accordingly, Respondents' proposed statutory interpretation does not align with the executive branch's contemporaneous guidance when the IIRIA passed or with the expectations the guidance established.

What is more, in its Notice to Appear, ICE marked Velazquez as "present in the United States," and notably not as "arriving." (ECF No. 9-2, PageID.132).  The fact that the Notice to Appear listed "arriving" and "present" as two distinct options, and that ICE selected "present," reinforces how novel Respondents' proposed statutory interpretation is.  As a result, the Court may reasonably infer that the general applicability of § 1226(a) was woven into the fabric of ICE's operations.

Overall, the legislative history and agency guidance supports the argument that § 1226(a) applies to Velazquez.  When considered in conjunction with the statutory interpretation, it is clear that Velazquez is entitled to a bond redetermination hearing.

### C.     Fifth Amendment Due Process

The Court will decline to decide the merits of Velazquez due process claim given that the Court will grant the relief he seeks based on its interpretation of the applicability of § 1226(a).  If the appropriate Respondent does not ensure that

Velazquez receives a bond redetermination hearing or release him within the time allotted, he may renew his Fifth Amendment Due Process claim.

### D. The Court will Dismiss All Respondents Except Monroe County Sheriff Troy Goodnough.

Respondents ask the Court to dismiss the amended petition against all of them except Monroe County Sheriff Troy Goodnough. (ECF No. 16, PageID.240). A writ of habeas corpus "shall be directed to the person having custody of the person detained." 28 U.S.C. § 2243. Except in extraordinary circumstances, the only proper respondent in a habeas corpus case is the detainee's immediate physical custodian. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435–42 (2004).

Here, Velazquez alleges that Sheriff Goodnough is his immediate custodian because the Sheriff "has the ultimate authority over the jails and their prisoners within the county." (ECF No. 12, PageID.160) (citing Mich. Comp. Laws § 51.75). Because the Court finds that Sheriff Goodnough is the proper respondent, it will dismiss the other respondents from this action. *See Padilla*, 542 U.S. at 434 (observing that the federal habeas statute's "consistent use of the definite article in reference to the custodian indicates that there is generally only one proper respondent to a given prisoner's habeas petition.").

\* \* \*

For the reasons given, the Court **ORDERS** that the amended petition for a writ of habeas corpus (ECF No. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that Monroe County Sheriff Troy Goodnough must ensure that Velazquez receives a bond hearing under § 1226(a) within seven days of this order or otherwise release him.

**IT IS FURTHER ORDERED** that all Respondents except for Sheriff Goodnough are **DISMISSED**.

**IT IS FURTHER ORDERED** that Sheriff Goodnough shall file a status report certifying his compliance with this order within 10 days.

Dated: February 17, 2026                    s/ Robert J. White
                                              Robert J. White
                                              United States District Judge